IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| JAMES C.; MERILEE C.; and J.C.,<br><br>      Plaintiffs,<br><br>v.<br><br>AETNA HEALTH and LIFE INSURANCE COMPANY; and LOCKHEED MARTIN CORPORATION GROUP BENEFITS PLAN,<br><br>      Defendants. | **MEMORANDUM DECISION AND ORDER DENYING [45] DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART [47] PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:18-cv-00717-DBB-CMR<br><br>District Judge David Barlow |

Defendant Aetna Health and Life Insurance Company (Aetna) denied Plaintiffs' claims for health care reimbursement under an employee welfare benefits plan. Plaintiffs contend their claims were wrongly denied under the Employee Retirement Income Security Act of 1974 (ERISA).[1] Before the court are the parties' cross-motions for summary judgment. Having considered the briefing and relevant law, the court denies Defendants' Motion for Summary Judgment[2] and grants in part and denies in part Plaintiffs' Motion for Summary Judgment.[3]

## I. BACKGROUND

James C. was a participant in the Lockheed Martin Corporation Group Benefits Plan (the Plan), a self-funded employee welfare benefits plan governed by ERISA.[4] James C. and Merilee

---

[1] *See generally* 29 U.S.C. § 1001, *et seq.*

[2] ECF No. 45.

[3] ECF No. 47.

[4] AETCLA1374–75; ECF No. 2 at ¶ 3; ECF No. 11 at ¶ 3. For ease of identification, the court refers to the Bates-numbered administrative record of Aetna's benefits decision with the preceding text provided by the parties "AETCLA." The Group Benefits Plan is Bates numbered AETCLA0001–158.

C. are the parents of J.C., who was eligible for benefits under the Plan as a beneficiary.[5] Aetna is the third-party claims administrator for the Plan.[6] Under the Plan, "the claims administrator has the full discretionary authority to interpret and construe the terms of the Plan and to decide questions related to the payment of benefits."[7] "The decision of the claims administrator shall be final and binding to the full extent permitted by law."[8]

The Plan covers medically necessary services, including mental health care, as detailed in the Plan's "What is Covered" section.[9] Some medically-necessary treatments are subject to limitations and exclusions.[10] Among other services, "[t]reatment in wilderness programs or other similar programs" are specifically excluded behavioral health services.[11] The Plan defines a behavioral health provider as "[a] licensed organization or professional providing diagnostic, therapeutic or psychological services for behavioral health conditions."[12]

The Plan requires precertification for some medical expenses, including "stays in a residential treatment facility for treatment of mental disorders, alcoholism or drug abuse."[13] It cautions, however, that failure to obtain precertification for treatment could result in claims reimbursed at reduced rates or not paid at all, depending on the circumstances.[14] The Plan explains:

---

[5] AETCLA1374; ECF No. 2 at ¶ 2; ECF No. 11 at ¶ 2.

[6] ECF No. 2 at ¶ 4; ECF No. 11 at ¶ 4.

[7] AETCLA0126.

[8] *Id.*

[9] ECF No. 2 at ¶ 2; AETCLA0086.

[10] AETCLA0043, 0079.

[11] AETCLA0086–87.

[12] AETCLA0136.

[13] AETCLA0048, 79.

[14] AETCLA0048.

> Covered expenses will be reduced if you do not obtain a required precertification before incurring non-emergency medical expenses. This means the *LM HealthWorks* Plan claims administrator will reduce the covered expense, or your expenses may not be covered.[15]

The Plan provides a context-specific application of the foregoing general language as shown in this chart.[16]

| If Precertification Is: | Then the Expenses Are: |
| --- | --- |
| Requested and approved | Covered. |
| Requested and denied | Not covered, but may be appealed. For more information, please refer to the *"Appeals Process"* section. |
| Not requested, but would have been covered if requested | Covered after a reduction is applied. The covered expenses are reduced by $500 for a hospital admission or $300 for all other medical services or supplies requiring precertification. |
| Not requested, and would not have been covered if requested | Not covered, but may be appealed. For more information, please refer to the *"Appeals Process"* section. |

From November 9, 2015 to January 21, 2016, J.C. received treatment at Outback Therapeutic Expeditions (Outback), a behavioral health program in Utah.[17] After the treatment was completed, Plaintiffs submitted claims for Outback.[18] Aetna denied the claims because it was not provided information about the treatment despite having requested information about the services provided at Outback.[19] Outback appealed and Aetna upheld the denial, stating:

> Based upon our review of the information provided we are upholding the original benefit determination. Under the plan, benefits are not available for wilderness programs or other similar programs. The member was admitted to this program with a pattern inconsistent with the contract requirements. There is therefore no coverage. The member may refer to their certificate of coverage or member handbook for specific details regarding their health care benefit coverage. This

---

[15] AETCLA0049.

[16] AETCLA0050.

[17] AETCLA0163.

[18] AETCLA1120–31.

[19] AETCLA1124–25; AETCLA1166–74.

> denial of coverage is based solely upon the reasons set forth above. No other basis
> for exclusion (e.g., medical necessity of the service or supply) that may be
> applicable to the circumstances was evaluated at this time.[20]

After receiving additional information, Aetna changed its basis for denial of claims for coverage

in January 2017, stating that Plaintiffs had not obtained the required precertification for the

Outback services.[21] On May 10, 2017, Plaintiffs appealed arguing that failure to precertify the

treatment merely meant a $300 reduction in benefits.[22] On June 7, 2017, Aetna upheld the denial,

stating in relevant part:

> You are appealing about the denial of coverage for the residential treatment
> facility services received at the Outback Therapeutic Expeditions on November 9,
> 2015 to January 21, 2016.
>
> The plan provisions require precertification for inpatient residential treatment. We
> review the authorization requests for medical necessity before services are
> performed. Our records do not indicate a requested precertification for this stay in
> a residential treatment facility. Therefore, no benefits are payable.
>
> Please reference your [Summary Plan Description] on page 9 under the section
> entitled "Precertification" which states in part:
>
>> When you are receiving care for inpatient stays, certain tests and
>> procedures and outpatient surgeries, precertification is required by the LM
>> HealthWorks Plan claims administrator. . . . If you do not precertify, your
>> benefits may be reduced or the plan may not pay any benefits at all.[23]

On August 1, 2017, Merilee C. submitted a second-level appeal, again arguing that lack

of precertification should lead only to a $300 benefits reduction, not outright denial.[24] In this

appeal, Merilee also requested a full, fair, and thorough review; she requested that Aetna provide

her with the particular provision in the Plan supporting the denial decision; and she requested

---

[20] AETCLA0217.

[21] AETCLA0323–24; *see* ECF No. 45 at ¶ 20.

[22] AETCLA0305–09.

[23] AETCLA0393–95.

[24] AETCLA0405–09.

copies of all documents under which the Plan is operating.[25] Aetna again upheld the denial on

August 30, 2017, stating:

> In the appeal, you requested a second level appeal. You indicated that your plan
> does not have a provision to deny 100 percent of inpatient residential claims. You
> feel that the reduction for failure to precertify the services is $300.
>
> . . .
>
> According to the plan provisions, precertification is required for residential
> treatment. Therefore, based on the plan provisions the claims were correctly
> denied.[26]

Aetna did not explain why the $300 reduction provision did not apply to the Outback

circumstances.[27] Aetna never engaged in a medical necessity evaluation for J.C.'s treatment at

Outback.[28]

Immediately after discharge from Outback on January 21, 2016, J.C. was admitted to

Monarch School (Monarch), a therapeutic boarding school in Montana.[29] J.C. was discharged

from Monarch approximately fourteen months later, on March 16, 2017.[30] Aetna denied

Plaintiffs benefits for Monarch for failure to obtain precertification and because Aetna did not

receive requested information from the health care provider.[31]

---

[25] AETCLA0409.

[26] AETCLA0541–43.

[27] AETCLA0542. Plaintiffs also assert, without citation to the record, that the requested Plan documents were not
provided. ECF No. 47 at ¶ 55. However, this assertion is disputed. ECF No. 49 at ¶ 55. This fact is not material to
resolution of the motions for summary judgment.

[28] *See* ECF No. 49 at 28 (acknowledging "no medical necessity review was conducted"); AETCLA0217 ("No other
basis for exclusion (e.g., medical necessity of the service or supply) that may be applicable to the circumstances
was evaluated at this time."); AETCLA0394 ("We review authorization requests for medical necessity before services
are performed. Our records do not indicate a requested precertification for this stay in a residential treatment facility.
Therefore, no benefits are payable."); AETCLA0541–43.

[29] AETCLA0850; AETCLA1099–20; *see* AETCLA1409–1557.

[30] AETCLA0850; AETCLA1099–20.

[31] AETCLA0297, 817–18; 1182, 0799. The parties do not identify when the Monarch claims were first submitted to
Aetna for review. There is no dispute, however, that Plaintiffs did not obtain precertification for the Monarch
services.

On May 10, 2017, Merilee C. submitted a level-one appeal arguing, in part, that the Plan does not authorize "a 100% pre-certification penalty in cases where pre-certification was not obtained."[32] Merilee also provided medical records and requested that Aetna provide her with all governing Plan documents.[33] On June 15, 2017, Aetna upheld denial of benefits for lack of precertification.[34] Merilee C. submitted a level-two appeal on August 7, 2017.[35] Aetna again upheld its denial on September 14, 2017, stating:

> In the appeal, you requested we allow coverage for the inpatient residential treatment provided by Monarch School from January 21, 2016 to March 16, 2017 for [J.C.]. You stated that your plan does not contain a provision to deny coverage for failure to obtain precertification.
>
> . . .
>
> Please refer to page 10 under the section entitled What Happens If You Do Not Precertify in your [Summary Plan Description], where it states "Covered expenses will be reduced if you do not obtain a required precertification before incurring nonemergency medical expenses. This means the *LM HealthWorks* Plan claims administrator will reduce the covered expense, or your expenses may not be covered. You will be responsible for the unpaid balance of the bills.
>
> If you receive care from an out-of-network provider (with the exception of emergency services), you are responsible for requesting precertification of your care with the *LM HealthWorks* Plan claims administrator before receiving services. . . . If you or your provider's request for precertification treatment is not approved, the benefit payable may be significantly reduced, or your expenses may not be covered.
>
> You are required to obtain precertification prior to incurring services. The plan will not cover inpatient treatment without an authorization.[36]

Aetna never addressed the medical necessity of J.C.'s treatment at Monarch.[37]

---

[32] AETCLA0804–09, 0807.

[33] AETCLA0808. The parties dispute whether Merilee C. requested that Aetna evaluate the "medical necessity" of treatment at Outback and Monarch. *See* ECF No. 49 at ¶ 58.

[34] AETCLA0919–22.

[35] AETCLA0932–37.

[36] AETCLA1100.

[37] *See* AETCLA0814–18; AETCLA0823, 827–32; AETCLA0837–42, 843; AETCLA0920; AETCLA1099–1100.

## II. LEGAL STANDARD

### A.  Summary Judgment Standard.

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[38] "When both parties move for summary judgment in an ERISA case, thereby stipulating that no trial is necessary, summary judgment is merely a vehicle for deciding the case; the factual determination of eligibility of benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor."[39]

### B.  Review of Benefits Decisions Under ERISA.

The court must first determine the lens through which Aetna's benefits decisions must be reviewed. The Supreme Court has observed that "the validity of a claim to benefits under an ERISA plan is likely to turn on the interpretation of terms in the plan at issue."[40] Applying the law of trusts, the Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[41] "[I]f the plan gives the administrator discretionary authority, 'we employ a deferential standard of review, asking only whether the denial of benefits was arbitrary and capricious.'"[42] Under the

---

[38] Fed. R. Civ. P. 56(a).

[39] *Raymond M. v. Beacon Health Options, Inc.*, 2020 WL 2810451, at *7 (D. Utah May 29, 2020) (brackets and internal quotation marks omitted) (quoting *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010)).

[40] *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

[41] *Id.*

[42] *Hodges v. Life Ins. Co. of N. Am.*, 920 F.3d 669, 675 (10th Cir. 2019) (quoting *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010)).

deferential standard, the court's review is "limited to determining whether the interpretation of the plan was reasonable and made in good faith."[43]

Here, the parties do not dispute that the Plan affords the administrator broad authority to interpret the Plan and make benefits decisions. Indeed, the Plan states: "the claims administrator has the full discretionary authority to interpret and construe the terms of the Plan and to decide questions related to the payment of benefits."[44] Plaintiffs challenge Aetna's decision denying payment of benefits based upon its interpretation of the Plan—both decisions for which the plan administrator is conferred discretion under the Plan. Accordingly, the arbitrary and capricious standard is the presumptive standard of review.

Plaintiffs argue, however, a more rigorous standard of review should apply under the circumstances. That is, despite the Plan's conferral of discretion on Aetna, Aetna's failure to adhere to statutorily required claim review and appeal processes negates any deference in the court's review.[45] For their part, Defendants argue that this is not Tenth Circuit precedent.[46]

Section 503 of ERISA requires that every employee benefit plan "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant."[47] It further requires that the plan "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the

---

[43] *Id.*

[44] AETCLA0126.

[45] ECF No. 47 at 14–22.

[46] ECF No. 49 at 23.

[47] 29 U.S.C. § 1133(1). This section is the codified Section 503 of ERISA. The relevant implementing regulations are codified at 29 C.F.R. § 2560.503-1.

appropriate named fiduciary of the decision denying the claim."[48] In its interpretation of these provisions, the Department of Labor has enumerated procedural requirements that ensure a full and fair review process to effectively address internal claims and appeals.[49] Generally, the plan's claim procedures must "contain administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants."[50] Under regulatory subsection 2560.503-1(*l*),

> in the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.[51]

In other words, if the plan's process fails to meet regulatory requirements, a claimant need not wade through more process as a formality simply to secure a procedurally flawed final decision. The provision says nothing about the applicable judicial standard of review. Nevertheless, the Department of Labor has explained that its intentions in including the deemed-exhausted provision in Section 2560.503-1 was to "clarify that the procedural minimums of the regulation

---

[48] 29 U.S.C. § 1133(2).

[49] *See generally* 29 C.F.R. § 2560.503-1 (implementing ERISA Section 503); *see also id.* § 2590.715-2719(b) (implementing "[o]ther consumer protection provisions, including other protections provided by the Affordable Care Act and the Mental Health Parity and Addiction Equity Act" as stated in 29 C.F.R. § 2590.701-1(b)).

[50] 29 C.F.R. § 2560.503-1(b)(5).

[51] *Id.* § 2560.503-1(*l*). In a similar regulation under the Patient Protection and Affordable Care Act, the Department of Labor has more specifically stated that where a plan fails to provide required procedural protections, the participant's "claim or appeal is deemed denied on review without the exercise of discretion by an appropriate fiduciary." 29 C.F.R. § 2590.715-2719(b)(2)(ii)(F)(1).

are essential to procedural fairness and that a decision made in the absence of the mandated procedural protections *should not be entitled to any judicial deference*."[52]

In *Halo v. Yale Health Plan, Dir. of Benefits & Records Yale Univ.*, 819 F.3d 42 (2d Cir. 2016), the Second Circuit found Subsection 503-1(*l*)(1) ambiguous and deferred to the Department of Labor's preamble explanation to conclude that the provision generally requires de novo judicial review. The court observed that despite ERISA's requirement that a plan administrator provide specific reasons for an adverse determination, "in at least one notification, the only explanation Yale Health Plan provided to Halo was 'SERVICE NOT AUTHORIZED.'"[53] The court noted that "under certain circumstances, a plan administrator's failure to comply with the letter of the claims procedures outlined in ERISA requires courts to eschew the more deferential arbitrary and capricious review normally applied to an administrator's discretionary decisions in favor of a more searching de novo review."[54] Finding 29 C.F.R. § 2560.503-1(*l*) ambiguous with respect to the applicable judicial standard of review, the court deferred to the agency's interpretation that the deemed-exhausted provision was meant to eliminate deferential judicial review.[55] The Second Circuit ultimately held:

> when denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503–1, will result in that claim being reviewed de novo in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent *and* harmless.[56]

---

[52] EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974; RULES AND REGULATIONS FOR ADMINISTRATION AND ENFORCEMENT; CLAIMS PROCEDURE, 65 FR 70246-01 at 70255 (emphasis added).

[53] *Halo v. Yale Health Plan, Dir. of Benefits & Records Yale Univ.*, 819 F.3d 42, 46 (2d Cir. 2016); *see* 29 C.F.R. § 2560.503-1(g)(1)(i), (ii) (requiring a "specific reason" for denial of benefits with "[r]eference to the specific plan provisions on which the determination is based").

[54] *Halo*, 819 F.3d at 47 (citation and internal quotation marks omitted).

[55] *Id.* at 53 (quoting 65 Fed. Reg. 70246-01, 70,255).

[56] *Id.* at 60–61.

Plaintiffs ask this court to adopt the *Halo* standard. However, the court cannot adopt the Second Circuit's analysis if the meaning of 29 C.F.R. § 250.503-1(l) is not ambiguous in the first instance. "A regulation is ambiguous if it is reasonably susceptible to more than one interpretation or capable of being understood in two or more possible senses or ways."[57] The court begins by "examining the plain language of the text, giving each word its ordinary and customary meaning."[58] "If, after engaging in this textual analysis, the meaning of the regulations is clear, [the court's] analysis is at an end[.]"[59]

Although Subsection 503-1(*l*)(1) opens the door for a civil action when a plan fails to employ a reasonable claims procedure, it is silent on the judicial standard of review applicable in that subsequent proceeding.[60] It simply authorizes a "route to judicial review" otherwise unavailable because of administrative exhaustion requirements.[61] Because the regulation does not address the applicable standard of review, its language is not susceptible to more than one interpretation on this point. Where "uncertainty does not exist, . . . [t]he regulation then just means what it means—and the court must give it effect, as the court would any law."[62] The regulation is not ambiguous and the court declines to apply the *Halo* standard.

Under Tenth Circuit precedent, de novo review is appropriate despite a plan's conferral of discretion on a plan administrator if: the administrator fails to exercise discretion within the

---

[57] *Jake's Fireworks Inc. v. Acosta*, 893 F.3d 1248, 1261 (10th Cir. 2018) (citation and internal quotation marks omitted).

[58] *Mitchell v. Comm'r*, 775 F.3d 1243, 1249 (10th Cir. 2015).

[59] *Id.*

[60] 29 C.F.R. § 2560.503-1(*l*)(1).

[61] *Joel S. v. Cigna*, 356 F. Supp. 3d 1305, 1312 (D. Utah 2018), *appeal dismissed* (Mar. 28, 2019). In the instant case, there is no question about the exhaustion of Plaintiffs' administrative remedies. Plaintiffs' two claims were denied and upheld on two levels of appeal. The parties therefore focus their argument on the alternative standard-of-review question.

[62] *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415, 204 L. Ed. 2d 841 (2019).

required timeframe;[63] the administrator fails to apply its expertise to a particular decision;[64] the case involves "serious procedural irregularities";[65] the case involves "procedural irregularities in the administrative review process";[66] or where the plan members lack notice of the conferral of administrator discretion over the plan.[67] However, possible exceptions could draw the standard back to deferential review.[68] One prominent exception is substantial compliance: "in the context of an ongoing, good faith exchange of information between the administrator and the claimant, inconsequential violations of the deadlines or other procedural irregularities would not entitle the claimant to de novo review."[69] The Tenth Circuit has questioned the continued viability of this exception in light of regulatory changes.[70] But it remains the law of the Circuit that courts do not "apply 'a hair-trigger rule' requiring de novo review whenever the plan administrator, vested

---

[63] *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 631–32 (10th Cir. 2003).

[64] *Id.* at 632.

[65] *Martinez v. Plumbers & Pipefitters Nat. Pension Plan*, 795 F.3d 1211, 1215 (10th Cir. 2015).

[66] *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 797 (10th Cir. 2010); *Mary D. v. Anthem Blue Cross Blue Shield*, 778 F. App'x 580, 588 (10th Cir. 2019) (unpublished).

[67] *Lyn M. v. Premera Blue Cross*, 966 F.3d 1061, 1065 (10th Cir. 2020).

[68] *See, e.g.*, *Finley v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan*, 379 F.3d 1168, 1174 (10th Cir. 2004) (explaining that Finley's administrative appeal falls into the "McGarrah exception," where deferential review applies "if a claimant fails to provide meaningful new evidence or raise significant new issues on administrative appeal, and the delay does not undermine the court's confidence in the integrity of the administrator's decision-making process" (brackets, citations, and internal quotation marks omitted) (quoting *McGarrah v. Hartford Life Ins. Co.*, 234 F.3d 1026, 1031 (8th Cir. 2000)).

[69] *Rasenack ex rel. Tribolet v. AIG Life Ins. Co.*, 585 F.3d 1311, 1317 (10th Cir. 2009) (citing *Gilbertson*, 328 F.3d at 634).

[70] *Kellogg v. Metro. Life Ins. Co.*, 549 F.3d 818, 828 (10th Cir. 2008) ("In January 2002, amendments to the regulations took effect that have called into question the continuing validity of the substantial compliance rule."); *see also Halo*, 819 F.3d at 56 ("Whatever the merits of applying the substantial compliance doctrine under the 1977 claims-procedure regulation, we conclude that the doctrine is flatly inconsistent with the 2000 regulation."). In its 2000 implementation, the Department of Labor explicitly rejected the suggestions that it implement a "standard of good faith compliance as the measure for requiring administrative exhaustion," and it rejected the suggestion that it "recognize the judicial doctrine under which exhaustion is required unless the administrative processes impose actual harm on the claimant." EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974; RULES AND REGULATIONS FOR ADMINISTRATION AND ENFORCEMENT; CLAIMS PROCEDURE, 65 FR 70246-01 at 70255–56.

with discretion, failed *in any respect* to comply with the procedures mandated by this regulation."[71]

Plaintiffs contend that Aetna's process was deficient because it "refused to carry out any review of the medical records Merilee had included" in order to assess medical necessity.[72] Plaintiffs assert that Aetna failed to explain why J.C.'s treatment at Outback and Monarch "should not have been covered if retrospective certification was obtained" as contemplated under the Plan.[73] And they contend that Aetna failed to provide the particular provision on which it based its denials.[74]

The Plan requires precertification for all inpatient stays, including residential treatment facilities.[75] Aetna's Outback denial was based on lack of precertification, but Plaintiffs argued in the appeals that the Plan required only a $300 penalty where treatment was not pre-certified but later determined to be covered by the Plan.[76] Aetna did not address Plaintiffs' $300-penalty argument nor did it assess medical necessity for the treatments, but it did cite the Plan's precertification procedures and it offered a clear basis for denial. Setting aside the disputed substance of the denials, which will be addressed later, Aetna's limited review does not rise to the level of a "serious procedural irregularity"[77] or even a "procedural irregularity."[78] These are

---

[71] *LaAsmar*, 605 F.3d at 799.

[72] ECF No. 47 at 20.

[73] *See id.*

[74] *See id.* at ¶ 51; ECF No. 49 at ¶ 51; AETCLA0409.

[75] AETCLA0048, 79.

[76] AETCLA0305–09.

[77] *Martinez*, 795 F.3d at 1215.

[78] *LaAsmar*, 605 F.3d at 797.

not procedural deficiencies, but simple decision-making—Aetna clearly articulated its basis for denial of the claims.

In sum, the Plan affords Aetna broad discretion to interpret and make benefits decisions under the Plan, and the court therefore applies the arbitrary and capricious standard of review. The plain language of the ERISA implementing regulations do not dictate a heightened standard. Plaintiffs have not shown serious procedural irregularities that would require a more exacting review. Assuming, without deciding, that Aetna's failure to address some of Plaintiffs arguments are procedural irregularities, these omissions are not "serious enough to warrant de novo review."[79] Accordingly, the court's arbitrary and capricious review "is limited to determining whether the interpretation of the plan was reasonable and made in good faith."[80]

## III. DISCUSSION

### A. Aetna's Decisions Denying Plaintiffs' Benefits Were Arbitrary and Capricious.

Aetna denied Plaintiffs' benefits claims for treatment at Outback and Monarch because Plaintiffs failed to obtain precertification. Although the Plan requires precertification for these services, it also provides a specific avenue for reimbursement of covered treatment despite the lack of precertification. Consequently, Aetna's denials of Plaintiffs' claims for lack of precertification did not comport with the Plan's requirements and were unreasonable.

J.C. received services at Outback from November 9, 2015 to January 21, 2016.[81] After receiving information about the Outback treatment, Aetna denied Plaintiffs' claims for benefits in a January 2017 Explanation of Benefits stating, "The service is not covered as the proper

---

[79] *Martinez*, 795 F.3d at 1215.

[80] *LaAsmar*, 605 F.3d at 796 (citation and internal quotation marks omitted).

[81] ECF No. 2 at ¶¶ 9, 17.

certification was not obtained."[82] Plaintiffs appealed the denial in May 2017, contending the claims should not have been denied outright but instead should be subject to a $300 lack-of-precertification penalty.[83] Plaintiffs argued that the Plan "does not include a provision allowing [Aetna] to apply a 100% precertification penalty in cases where precertification was not obtained."[84] In the event the denial was upheld, Plaintiffs requested "specific detailed reasons for denial," and requested "a copy of all documents under which the plan is operated."[85] In June 2017, Aetna upheld its denial of the Outback claims because the Plan provisions "require precertification for inpatient residential treatment."[86] Quoting the Summary Plan Description, Aetna explained, "If you do not precertify, your benefits may be reduced or the plan may not pay any benefits at all."[87] Aetna also declined to assess medical necessity because it "review[s] the authorization requests for medical necessity before services are performed."[88]

Plaintiff's submitted a level-two appeal of the Outback decision in August 2017.[89] Plaintiffs disagreed with Aetna's decision and reiterated the argument that the Plan does not contain a provision authorizing "100% denial of inpatient mental health claims if precertification is not obtained," but instead imposes a $300 reduction of benefits.[90] Plaintiffs asserted Aetna did not respond "in any meaningful way" to the issues asserted in the level-one appeal because it did

---

[82] AETCLA0323–24. In earlier communications with Outback, and before it had the necessary information from Outback, Aetna denied benefits on the basis that it was an excluded wilderness program.

[83] AETCLA0305–09.

[84] AETCLA0307.

[85] AETCLA0308.

[86] AETCLA0394. Noting it reviewed the claims, the precertification system, the appeal request, and the Plan, Aetna explained, "This appeal is about the denial of coverage for the residential treatment facility services received at Outback Therapeutic Expeditions on November 9, 2015 to January 21, 2016." *Id.* at 393.

[87] AETCLA0394.

[88] *Id.*

[89] AETCLA0405–09.

[90] AETCLA0407.

not address the $300-penalty argument.[91] Plaintiff attached the Outback medical records so Aetna

could "conduct a retrospective review" of the claims.[92] And again, Plaintiffs requested "specific

detailed reasons for denial."[93] Aetna denied the level-two appeal in August 2017.[94] It determined

that the Plan requires precertification for residential treatment.[95] Although it acknowledged

Plaintiffs' $300-penalty argument, Aetna focused on language in the Summary Plan Description

stating "[p]recertification is required for . . . [s]tays in a residential treatment facility for

treatment of mental disorders, alcoholism or drug abuse."[96]

In similar fashion, Aetna denied Plaintiffs' benefits claims for treatment at Monarch.

Immediately following Outback, J.C. was admitted to Monarch from January 21, 2016 to March

16, 2017. Plaintiffs once again did not obtain precertification, and Aetna denied benefits

reimbursement because precertification was required. In a letter dated March 8, 2017, Aetna

explained:

> The services rendered require authorization prior to being rendered. Our records
> show that precertification was not obtained. We are upholding the denial as
> administrative. Since the administrative denial is based on the health plan's
> provisions, a medical necessity review will not be conducted.[97]

Plaintiffs submitted a level-one appeal arguing, as before, that the Plan does not allow

denial for lack of precertification of the treatment.[98] Aetna upheld its denial on June 15, 2017 for

---

[91] *Id.*

[92] AETCLA0408.

[93] AETCLA0409.

[94] AETCLA0541–43.

[95] AETCLA0542.

[96] *Id.* (quoting Summary Plan Description at 9, AETCLA0048).

[97] AETCLA0297.

[98] AETCLA0804-09.

lack of precertification.[99] Plaintiffs submitted a second-level appeal on August 7, 2017. On

September 14, 2017, Aetna again upheld its denial stating, "You must obtain precertification

prior [to] receiving care."[100]

"Under arbitrary and capricious review, this court upholds [the administrator's]

determination so long as it was made on a reasoned basis and supported by substantial

evidence."[101] The administrator's decision "will be upheld unless it is not grounded on any

reasonable basis."[102]

The Plan states under the heading "Services and Supplies Requiring Precertification" that

"[p]recertification is required for the following types of medical expenses: . . . Stays in a

residential treatment facility for treatment of mental disorders, alcoholism or drug abuse."[103] In

its benefits denials, Aetna explained that this precertification requirement included the "stay in a

residential treatment facility" at Outback,[104] and "the inpatient residential treatment provided by

Monarch School."[105] To be sure, the Plan makes clear that precertification is required for these

residential treatment services.[106] It also states generally that failure to obtain precertification

means the administrator "will reduce the covered expense, or your expenses may not be

---

[99] AETCLA0919–22.

[100] AETCLA1099.

[101] *Van Steen v. Life Ins. Co. of N. Am.*, 878 F.3d 994, 997 (10th Cir. 2018).

[102] *Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.*, 491 F.3d 1180, 1193 (10th Cir. 2007) (citations and internal quotation marks omitted), *abrogated on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008).

[103] AETCLA0048; AETCLA0055 (noting precertification is required for "mental health: inpatient services"); AETCLA0074 (reminding the participant that mental health inpatient services must be precertified and directing them to the "precertification" section).

[104] AETCLA0394; AETCLA0542 (upholding denial of Outback benefits because "precertification is required for residential treatment").

[105] AETCLA1100; AETCLA0920 (Determining "there was no authorization on file for the inpatient stay" at Monarch School).

[106] AETCLA0048.

covered." [107] Aetna claims that this gave it the power to choose whether to reduce or deny

coverage here.[108] It did not. Critically, following the language on which Aetna relies, *the Plan*

*then specifies exactly what will happen*—reduction of coverage or denial of coverage—

depending on the circumstances[109]:

| If Precertification Is: | Then the Expenses Are: |
|---|---|
| Requested and approved | Covered. |
| Requested and denied | Not covered, but may be appealed. For more information, please refer to the *"Appeals Process"* section. |
| Not requested, but would have been covered if requested | Covered after a reduction is applied. The covered expenses are reduced by $500 for a hospital admission or $300 for all other medical services or supplies requiring precertification. |
| Not requested, and would not have been covered if requested | Not covered, but may be appealed. For more information, please refer to the *"Appeals Process"* section. |

This Plan language makes Aetna's position in the appeals process and this case

impossible to defend. The Plan clearly provides for coverage review for services that were not

precertified, not a categorical denial based on lack of precertification. In this case, where

precertification was not requested, the only possibilities were a coverage determination followed

by: (1) coverage with a $300 reduction; or (2) denial of coverage based on grounds other than

lack of precertification. There is no room for interpretation: the Plan spells out exactly what is to

happen. There is no authorization for the Plan administrator to ignore this binding Plan language

and decide, instead, that the lack of precertification required or permitted denial without a full

and fair coverage review. Neither does the Plan limit review of claims for medical necessity only

---

[107] AETCLA0049.

[108] *Id.* at 31 ("Here, the Plan granted Aetna discretionary authority to deny payment of benefits where Plaintiffs failed to precertify J.'s treatment at Outback and Monarch. The Plan also gave Aetna the option to conduct a medical necessity review and then either deny benefits in their entirety or reduce benefits for failure to precertify.").

[109] AETCLA0050.

"before services are performed," as Aetna has suggested.[110] The administrator's power to construe does not include the power to ignore the Plan's plain language. In short, Aetna does not have the power to excise or treat as surplusage plan language it does not want to apply, preferring instead broader language to discover unfettered discretion that the Plan does not confer.

Because it ignored specific expense-coverage language in the Plan, Aetna's decisions were unreasonable and irrational. As the Tenth Circuit has made clear, the "arbitrary and capricious standard of review is not without meaning."[111] An "interpretation inconsistent with the plan's unambiguous language" is arbitrary and capricious.[112] When it jettisoned certain terms of the Plan, Aetna's benefits decisions fell off the "continuum of reasonableness."[113] Therefore, Aetna's decisions denying Plaintiffs' Outback and Monarch claims are arbitrary and capricious and must be vacated.

## B. Aetna's Revival in Litigation of an Abandoned Basis for Denial Does Not Salvage Its Arbitrary Decision to Deny Benefits for Outback.

As already addressed in detail, Aetna denied Plaintiffs' benefits for treatment received at Outback because it was residential treatment for which precertification was required. Prior to this conclusion, however, Aetna denied benefits because it had requested, but had not received, health care provider information for Outback.[114] Outback submitted a level-one appeal in August 2016 and on September 30, 2016, Aetna denied Outback's appeal stating, "under the plan, benefits are not available for wilderness programs or other similar programs."[115]

---

[110] ECF No. 47 at ¶ 47; ECF No. 49 at ¶ 47; AETCLA0394.

[111] *McMillan v. AT&T Umbrella Benefit Plan No. 1*, 746 F. App'x 697, 705 (10th Cir. 2018) (unpublished).

[112] *Tracy O. v. Anthem Blue Cross Life & Health Ins.*, 807 F. App'x 845, 854 (10th Cir. 2020) (unpublished) (citing *Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.*, 491 F.3d 1180, 1193 (10th Cir. 2007)).

[113] *See Adamson v. Unum Life Ins. Co. Of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006).

[114] AETCLA1166–1173.

[115] AETCLA0159–162; AETCLA0217.

As Defendants point out, however, Outback provided additional information to Aetna.[116] With the required information in hand, on January 19, 2017 Aetna abandoned its wilderness-exclusion basis and instead denied the Outback claims for lack of precertification.[117] Plaintiffs and Aetna thus proceeded through the internal appeals process not arguing exclusion under the Plan, but disputing whether failure to precertify residential treatment services required denial of the claims.

Inexplicably, Defendants here contend that "Plaintiffs never suggest that Outback is somehow a covered service," and "[a]lthough the Plan covers residential treatment facilities, no evidence has been presented to suggest that Outback meets the definition of a residential treatment facility." Aetna is the nominal benefits expert whose evaluation of Outback deserves some judicial deference. It is hard to imagine how "no evidence has been presented" on Outback as a "residential treatment facility" when Aetna consistently described Outback as a residential treatment facility in communications with Plaintiffs after getting the information it needed from Outback.[118] Aetna failed to assess whether the Outback treatment was covered in the first instance, and it explicitly declined to resolve medical necessity of the treatment.[119] Thus, whatever evidence is necessary on this question may be derived from the record in which Aetna routinely described Outback as a residential treatment center. It is not Plaintiffs' task in the

---

[116] *See* ECF No. 45 at ¶ 21 ("After Outback provided the information requested by Aetna, on January 19, 2017 Aetna denied payment of benefits on the basis that Plaintiffs had not obtained prior certification for J.C.'s stay at Outback."); AETCLA0323–24.

[117] AETCLA0323–24.

[118] AETCLA0394; AETCLA0542 (upholding denial of Outback benefits because "precertification is required for residential treatment").

[119] *See* ECF No. 49 at 28 (acknowledging "no medical necessity review was conducted"); AETCLA0217 ("No other basis for exclusion (e.g., medical necessity of the service or supply) that may be applicable to the circumstances was evaluated at this time."); AETCLA0394 ("We review authorization requests for medical necessity before services are performed. Our records do not indicate a requested precertification for this stay in a residential treatment facility. Therefore, no benefits are payable."); AETCLA0541–43.

instant matter to put forward evidence to supplement the record. Indeed, the court would disregard it if they did.[120]

Also concerning is Aetna's implicit request that the court apply a more searching review to correct Aetna's own statement that Outback was a residential treatment facility—a judicial determination plainly inconsistent with a deferential standard. Aetna exercised the discretion afforded it by the Plan to construe its terms and make benefits determinations, and it ultimately described Outback as a residential treatment center. As illustrated here, "[a] plan administrator's failure to consistently apply the terms of an ERISA plan is arbitrary and capricious."[121] In the Tenth Circuit, reviewing courts "will not permit ERISA claimants denied the timely and specific explanation to which the law entitles them to be sandbagged by after-the-fact plan interpretations devised for purposes of litigation."[122] Although Aetna originally described Outback as an excluded wilderness program, it ultimately retreated from that description when it received more information about Outback. The record does not even establish that Plaintiffs here were confronted with the wilderness basis for denial of their Outback claims.[123] Fairness does not permit Aetna to revive in litigation what it abandoned in its claims review process.

## IV. REMEDY

### A. Remand is the Proper Remedy Under the Circumstances.

"Generally speaking, when a reviewing court concludes that a plan administrator has acted arbitrarily and capriciously in handling a claim for benefits, it can either remand the case to

---

[120] *Flinders*, 491 F.3d at 1190 ("In reviewing a plan administrator's decision, we may only consider the evidence and arguments that appear in the administrative record.").

[121] *Tracy O.*, 807 F. App'x at 854.

[122] *Spradley v. Owens-Illinois Hourly Employees Welfare Ben. Plan*, 686 F.3d 1135, 1140 (10th Cir. 2012) (quoting *Flinders*, 491 F.3d at 1191.

[123] Aetna denied Outback's appeal based upon the wilderness exclusion and it is not clear whether Plaintiffs participated in the appeal or were apprised of the decision.

the administrator for a renewed evaluation of the claimant's case, or it can award a retroactive reinstatement of benefits."[124] As the Tenth Circuit has observed:

> Which of these two remedies is proper in a given case, however, depends upon the specific flaws in the plan administrator's decision. In particular, if the plan administrator failed to make adequate findings or to explain adequately the grounds of its decision, the proper remedy is to remand the case to the administrator for further findings or explanation. In contrast, a retroactive reinstatement of benefits is proper where, but for the plan administrator's arbitrary and capricious conduct, the claimant would have continued to receive the benefits or where there was no evidence in the record to support a termination or denial of benefits.[125]

Here, the administrator failed to make adequate findings because it did not evaluate the medical necessity of the treatments.[126] Plaintiffs provided Aetna with medical records and treatment documentation that Aetna could have considered to determine medical necessity in the first instance. The record contains statements of therapists and psychologists, and it incorporates other medical records pertaining to the services at Outback and Monarch. Because it concluded that lack of precertification allowed it to categorically deny coverage, Aetna ignored the medical reports Plaintiffs submitted and explicitly declined to make a medical necessity determination.

The court cannot determine, in the first instance, whether "there was no evidence in the record to support a . . . denial of benefits."[127] In other words, this case is not "so clear cut that it would be unreasonable for the plan administrator to deny the application for benefits on any ground."[128] Under the circumstances of this case, the court must remand for the plan

---

[124] *DeGrado v. Jefferson Pilot Fin. Ins. Co.*, 451 F.3d 1161, 1175 (10th Cir. 2006) (citation and internal quotation marks omitted).

[125] *Id.* at 1175–76 (brackets, citations, and internal quotation marks omitted).

[126] *See* AETCLA0217; AETCLA0394; AETCLA0541–43.

[127] *DeGrado*, 451 F.3d at 1175–76 (brackets, citations, and internal quotation marks omitted).

[128] *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1289 (10th Cir. 2002).

administrator to provide a full and fair evaluation of Plaintiffs' claims. Aetna should consider the medical records, the services rendered, and all relevant Plan language.

**B. Prejudgment Interest Is Not Appropriate Here.**

Prejudgment interest is "appropriate when its award serves to compensate the injured party and its award is otherwise equitable" and is "considered proper in ERISA cases."[129] Generally, prejudgment interest is compensation for the loss of use of money—owing but withheld amounts.[130] Because the court remands this matter to the claims administrator rather than award benefits, prejudgment interest is not warranted.

**C. Attorney Fees and Costs Are Awarded to Plaintiffs.**

ERISA authorizes an award of attorney fees and costs to either party, in the court's discretion.[131] There is no requirement in this authorization that a party first prevail to be eligible for such an award.[132] But the fee claimant must have "achieved 'some degree of success on the merits.'"[133] The Tenth Circuit has provided substantial guidance in the factors to be considered, including:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to personally satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.[134]

---

[129] *Allison v. Bank One-Denver*, 289 F.3d 1223, 1243 (10th Cir. 2002) *, as amended on denial of reh'g* (June 19, 2002).

[130] *Caldwell*, 287 F.3d at 1286 (explaining that prejudgment interest in the Tenth Circuit "compensate[s] the wronged party for being deprived of the monetary value of his loss from the time of the loss to the payment of the judgment" (citation and internal quotation marks omitted)).

[131] 29 U.S.C. § 1132(g)(1).

[132] *Cardoza v. United of Omaha Life Ins. Co.*, 708 F.3d 1196, 1207 (10th Cir. 2013).

[133] *Id.* (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010)).

[134] *Gordon v. U.S. Steel Corp.*, 724 F.2d 106, 109 (10th Cir. 1983).

"No single factor is dispositive and a court need not consider every factor in every case."[135]

All but one of the relevant factors support an award of fees and costs in this case or are neutral. First, Defendant Aetna was clearly culpable. It ignored specific plan language applicable to Plaintiffs' case, and it did so despite Plaintiffs pointing it to that very language during the appeals process.[136] In short, this lawsuit became necessary because Aetna did not follow the clear language of the Plan it was tasked with administering. Second, the Defendants' ability to satisfy an award of attorney fees is not seriously in question.[137] Third, the award of attorney fees against the Defendants can reasonably be expected to help deter plans and administrators from ignoring the plain language of benefits plans, particularly when a claimant repeatedly asks them to address it.[138] Fourth, the Plaintiffs are not primarily seeking to benefit all Plan participants or seeking to resolve an important legal question, though the court notes that the standard of review

---

[135] *Cardoza*, 708 F.3d at 1207.

[136] AETCLA0306–08 (observing "it is clear a processing error was made when Aetna denied [the Outback] claims in their entirety because certification was not obtained, since the pre-certification penalty found in the plan is limited to a 300 dollar benefit reduction for this admission"); AETCLA0407 (asking "Why would you ignore the information I presented to you in my prior appeal letter, proving that the penalty for failure to obtain precertification for covered services . . . received at Outback is limited to a \$300 reduction in benefits?" (emphasis omitted)); AETCLA0806–0807; AETCLA0934–35.

[137] There can be no dispute that defendants are substantial enterprises. Aetna, for example, is a subsidiary of CVS Health, a Fortune 10 company. While the court does not assign any weight to this factor, it clearly does not weigh against an award of fees and costs. *See Foust v. Lincoln Nat'l Life Ins. Co.*, 2019 WL 6223822, at *1 (D. Utah Nov. 21, 2019), slip copy ("Second, while Lincoln faults Mr. Foust for not providing evidence of Lincoln's ability to pay fees, Lincoln also provides no evidence showing that it could not pay fees. So at best, this factor is neutral."); *but see James F. ex rel. C.F. v. CIGNA Behavioral Health, Inc.*, 2011 WL 2441900, at *2 (D. Utah June 15, 2011) (unpublished) ("With regard to the second factor, Defendant CIGNA Behavioral Health is a division of one of the major insurers in the country and it is certainly in a position to pay any award of attorney fees this Court assesses.").

[138] *See Raymond M. v. Beacon Health Options, Inc.*, 2020 WL 2810451, at *25 (D. Utah May 29, 2020) (determining that an award of fees would encourage defendants "to follow ERISA's minimum procedural regulations and engage in a 'meaningful dialogue' with claimants in the future"); *see also Spradley v. Owens-Illinois Hourly Employees Welfare Ben. Plan*, 686 F.3d 1135, 1140 (10th Cir. 2012) (observing the goals of ERISA "are undermined where plan administrators have available sufficient information to assert a basis for denial of benefits, but choose to hold that basis in reserve rather than communicate it to the beneficiary," and declining to address such bases "prevents ERISA plan administrators and beneficiaries from having a full and meaningful dialogue regarding the denial of benefits").

question is one on which courts have disagreed.[139] Finally, for the reasons stated earlier in this opinion, the Plaintiffs' position on Aetna's failure to properly apply clear plan language to their claims is meritorious, while Defendants' defense is without merit.[140] For these reasons, the court awards Plaintiffs their reasonable attorney fees and costs incurred prosecuting this matter.[141]

### ORDER

For the reasons stated in this Memorandum Decision and Order:

1. Defendants' motion for summary judgment is DENIED;[142]

2. Plaintiffs' motion for summary judgment is GRANTED IN PART AND DENIED IN PART;[143]

    a. The court DENIES Plaintiffs' request for an order awarding benefits under the Plan;

    b. The court DENIES Plaintiffs' request for prejudgment interest; and

    c. The court GRANTS Plaintiffs' motion as to find Aetna's benefits determinations arbitrary and capricious.

3. Plaintiffs' request for attorney fees and costs is GRANTED. Within twenty-one days of this Order, Plaintiffs' counsel should submit a petition for reasonable attorney fees

---

[139] *See* ECF No. 47 at 15; *see, e.g.*, *Fessenden v. Reliance Standard Life Ins. Co.*, 927 F.3d 998, 1003 (7th Cir. 2019) (concluding that *Halo v. Yale Health Plan, Dir. of Benefits & Records Yale Univ.*, 819 F.3d 42 (2d Cir. 2016) is inconsistent with Seventh Circuit substantial-compliance case law); *Raymond M. v. Beacon Health Options, Inc.*, 2020 WL 2810451, at *9 (D. Utah May 29, 2020) (noting "the Tenth Circuit has explicitly left open whether the substantial compliance doctrine applies to the revised 2002 regulations").

[140] ECF No. 47 at 22 (arguing "Aetna's denial of benefits based on the alleged lack of precertification of . . . treatment is simply not justified by the terms of the Plan"); ECF No. 49 at 30 (arguing that "Aetna acted reasonably in accordance with [its] discretion when it denied benefits" because the Plan states, "If you do not precertify, your benefits may be reduced *or the plan may not pay any benefits at all*").

[141] *See* 28 U.S.C. § 1920 (describing taxable costs).

[142] ECF No. 45.

[143] ECF No. 47.

and costs associated with this action, including an affidavit indicating a calculation of fees, an accounting of time, and costs.

4. Defendants' decisions denying Plaintiffs benefits for services at Outback and Monarch are VACATED and this matter is remanded to Aetna for further proceedings consistent with this decision.

Signed October 30, 2020.

BY THE COURT

David Barlow
United States District Judge